UNITED STATES DISTRICT COURT

FOR THE

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DAVID RAY ABSHIRE** § | CIVIL ACTION NO: |
| § | |
| *Plaintiff* § | |
| § | |
| v. § | |
| § | |
| **HIGHLAND RIDGE RV, INC.** § | |
| § | |
| *Defendant* § | JURY TRIAL REQUESTED |

<u>**COMPLAINT**</u>

### I.  Parties

1. Plaintiff, **DAVID RAY ABSHIRE**, now and has been at all times material hereto resident of the State of Louisiana.

2. Defendant, **HIGHLAND RIDGE RV, INC.**, hereinafter "HIGHLAND RIDGE", is a foreign corporation incorporated in the State of Indiana whose principle place of business in Louisiana is located at 501 Louisiana Avenue, Baton Rouge LA 70802 and whose agent for service of process is Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, LA 70802.

### II.  Jurisdiction

3. This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff, DAVID RAY ABSHIRE, and Defendant, HIGHLAND RIDGE RV, INC., are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs. The total cost of the subject vehicle to the Plaintiffs including finance charges to date, out of pocket expenses, lost wages, loss of use damages, non-pecuniary damages, and attorney fees will be over

$75,000.00.

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III.  Venue

4. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because Defendant is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

### IV. Conditions Precedent

5. All conditions precedents have been performed or have occurred.

### V.  Facts

#### A.  The Transaction

6. On August 4, 2014, Plaintiff purchased a new 2014 OPEN RANGE BUNK HOUSE 395BHS bearing VIN 5XMFL3920E5013921, hereinafter "OPEN RANGE," from PRIMEAUX RV, LLC. The OPEN RANGE was purchased primarily for Plaintiff's personal use. The sales contract was presented to Plaintiff at the dealership and was executed at the dealership.

7. The sales price of the OPEN RANGE was $48,857.84, excluding finance charges. Plaintiff made a down payment in the amount of $4,350.00. The total cost of the vehicle to Plaintiff including finance charges, damages, loss of use, attorney fees and costs will be over $75,000.00.

#### B.  Implied Warranties

8. As a result of the sale of the OPEN RANGE by Defendant to Plaintiff, an implied warranty of merchantability arose in the transaction which included the guarantee that the OPEN

RANGE would pass without objection in the trade under the contract description; and that the OPEN RANGE was fit for the ordinary purpose for which such motor vehicles are purchased.

9. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant. Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.  Express Warranties

10. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the OPEN RANGE occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the OPEN RANGE had, in fact, repaired the defects.

11. Plaintiff's purchase of the OPEN RANGE was accompanied by express warranties offered by Defendant, HIGHLAND RIDGE, and extending to Plaintiff. These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the OPEN RANGE.

12. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the HIGHLAND RIDGE's warranty booklet and owners manual.

### D.  Actionable Conduct

13. In fact, when delivered, the OPEN RANGE was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective

-3-

conditions have occurred since purchase, including, but not limited to the following Plaintiff summary:

> "We purchased a 2014 Open Range by Roamer on August 4, 2014 from Primeaux RV in Carencro, La. The day we were scheduled to pick up the camper, August 6th, we drove there and had to wait to be able to leave with it because they had to work on the jacks and leveling system which wasn't done TIL the next day. We had to leave and go back the next day to pick it up and still head to wait because they hadn't finished and also had to change out the microwave before we could leave with it. That was August 7th.
>
> On August 31st the camper had to be brought back to the shop because the leveling system still was not working along with 18 other issues starting with the system continuing leaving errors and having to do the system manually. After reading the papers that I forwarded to you guys, it was stated that the legs are bent and the manufacture is refusing to change them. We to this date continue to have issues with it.
>
> The outside lights were out on it they fixed it just to have them go out again after using them for maybe an hour.
>
> The exterior and interior speakers were not working along with the radio which all had to be replaced with all new system.
>
> The television stopped working even after we plugged in our DVD/ Blu Ray player to it would come on but no sound or picture would play. They replaced the radio system and so far it is working lie it's supposed to both tv and radio.
>
> The awning arm was bent on the awning they argued with me about that saying we bent it like how is it possible for us to bend it. They changed it out and now that works fine.
>
> The converter keeps blowing all fuses that are changed out. They had to change the converter because we could not get power if we weren't connected to the battery or the truck. They said the converter was out.
>
> The back bunkhouse never gets cool or hot because the A/C isn't working properly still to date. They said it's because the dump/quick vent needed to be closed we done that but it's still not cooling or heating the bunkhouse to date the front entry door was very hard to unlock with the keys they were supposed to change all the locks instead they lubed them.
> The bunkhouse sofa bed was hard to pull out so when it was finally able to

come out it caused the arm of the bed to go through the wall and causing the one pulling it out to go into the closet wall causing it to break therefore it had to be replaced, come to find out the sofa bed was never bolted down causing it to be difficult to pull out and flatten like it goes to make the bed they had to replace the entire sofa bed because the arms were bent on it also.

There were several moldings that needed to be replaced because they were either cut to short to fit the entire place where it was at or just not nailed at all. The door side front pass thru, the off door side and the 3rd off door side compartment doors of the camper would not lock or stay closed so we had to tape it shut to travel with the camper to bring to home. The locks were broken and was supposed to be replaced at this time but hey adjusted the door and added lube to the lock which never closed properly so they had to eventually change them or so they said they changed them but to date they are still not closing properly like they are supposed to.

The bottom left corner of the exterior slide room facia on the middle off doorside slide room is cracked thy had to replace that.

The camper went into the shop August 27, 2014 and we got it back in sometime in November of 2014. We had to cancel all our camping trips we had planned during this time due to this.

The converter has been changed 4 times on the camper and the leveling system has gave nothing but trouble from the day we went to pick up the camper the day we purchased it to this day the system is still not working right and now they are saying the legs are bent on the front side which from the start they knew it was giving issues to lower or pick up the legs so all they kept doing was lubing the legs instead of changing them out now the manufacture is saying they aren't warranting it because they are saying we bent them but I told them that it has gave issues from the day we were scheduled to pick it up but couldn't get it that day had to go back the next day and wait a few hours before we could leave.

I have spoken to the sale an David Morrow from the start of all his and also to the owner Mark Primeaux on the Friday, who told me that once it was completed he would put us in another camper. The Friday morning is when I spoke with Mark and he told me to go in on Monday because the camper would be finished by then a instead of getting this camper back he would trade it out for another one. I go Monday morning like we discussed on,y to find out that Mark no longer owns the business he sold it Friday afternoon and the new owners wouldn't honor Marks agreement. We continue to have the same issues with the camper and I requested a copy of all the work orders that has been

done from day one and as I go through the work orders that I was given I'm finding that it is on,y from August of 2015 and they are repeated copies front the same date.

Today July 21, 2016 I contacted the service center again because the camper has to go back into the shop to have the A/C replaced that they said was working properly because it's not working. Also the plugs are not working either not the wall by the sink and also the top plug by the window in the kitchen. I talked to Blake at the service center about the legs being bent because I found out by reading the work order that he gave me and asks why it wasn't taken care of and that's when he informed me that the manufacture wouldn't warrant you because Primeaux RV is making it seem like we done that when in fact that has been the issue with the leveling system and the legs being hard to pick up or pull out all alone. This is first that I hear about them being bent because they never once said anything about that to us when we picked up the camper. Blake advised me to contact the manufacture and gave me the phone number. I called today and told him all what has been going on.

I spoke to a Jason Treadway and he gave me the date of August 27, 2014 as the first time the camper was brought to the shop for the same issues it had the day we picked up the camper and was told th issues were resolved when they weren't.  Jason said he was calling Primeaux RV to see what was going on and would get back to me and I haven't heard back yet. He told me to try and speak to the owner of the business and see about them putting us into another camper and I told him what happened with Mark so he is looking into that and see what can be done at this point. We have had to cancel several trips due to the camper always being in the shop for mm the at a time. The camper has spent more time in the shop than we have had it at home and able to use it. As soon as I hear back from Jason I will email or call you back.

At this point we are wanting to be out of this camper completely and prefer not to deal with either of these companies due to he fact that we have been lied to several times and have been given the run around by the owner and the salesman and not to mention the rudeness of the service department which Mark had to intervene between him and I because I refused to deal with him due to him cursing me and calling me a liar that the camper had never been in the shop before or had any issues before which all the issues had been documented and the salesman David Morrow and the owner Mark knew about from day one.

I will finish this chronological order of issues as soon as I receive the correct work orders because there is so much with this camper that they have had to repair or replace that is not documented that Jason is looking into.  Please let

**me know what else I need to do at this point to resolve all this and get out of this camper as soon as possible before anything else goes wrong with it because the warranty ends August 4, 2016 which I believe they are trying to stall getting it finished so the warranty runs out and they don't have to fix it.  All we want is to be done with this nightmare."**

14. Since purchase, Plaintiff has returned his OPEN RANGE to Defendant and its authorized warranty service dealers for repairs on numerous occasions.  Despite this prolonged period during which Defendant were given the opportunity to repair the OPEN RANGE, the more significant and dangerous conditions were not repaired.  Defendant failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein.  From the date of its purchase, the OPEN RANGE continues to this day to exhibit some or all of the non-conformities described herein.

15. The defects experienced by Plaintiff with the OPEN RANGE substantially impaired its use, value and safety.

16. Plaintiff directly notified Defendant individually and through its authorized warranty service dealers of the defective conditions of the OPEN RANGE on numerous occasions.  Plaintiff notified Defendant that he wanted a rescission of the sale of the OPEN RANGE but the Defendant has failed and refused to buy back Plaintiff's defective OPEN RANGE.

**COUNT 1:  VIOLATIONS OF THE LOUISIANA REDHIBITION LAWS**

17. Plaintiff re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

18. The OPEN RANGE is a "thing" under La. Civil Code Articles 2520, et seq.

19. HIGHLAND RIDGE is a "manufacturer" under La. Civil Code Articles 2520, et seq.

20. PRIMEAUX RV is a "seller" under La. Civil Code Articles 2520, et seq.

21. Plaintiff is a "buyer" under in La. Civil Code Articles 2520, et seq.

22. The defects described in the OPEN RANGE vehicle meet the definition of a redhibitory defect as defined in La. Civil Code Articles 2520, et seq.

23. Plaintiff has provided the Defendant sufficient opportunity to repair his defective vehicle.

24. Plaintiff has performed each and every duty required of him under Louisiana Redhibition Laws, except as may have been excused or prevented by the conduct of the Defendant, as herein alleged.

25. The hidden defects in the OPEN RANGE existed at the time of sale, but were not discovered until after delivery. The OPEN RANGE is not usable and neither Plaintiff nor a reasonable prudent buyer would have purchased the OPEN RANGE had he known of the defects prior to the sale.

26. Furthermore, Defendant failed to perform the repair work in a good and workmanlike manner. This conduct by Defendant constitute a breach of the implied warranties under Louisiana law, and entitles Plaintiff to a rescission of the sale, return of the purchase price, plus all collateral costs of the sale, finance charges, insurance premiums, and out of pocket expenses.

27. Under Louisiana Redhibition laws, Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails. As a proximate result of Defendant' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

28. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

29. Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

30. Defendant, FOREST RIVER, is a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

31. The OPEN RANGE is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiff in fact purchased it wholly or primarily for personal use.

32. The express warranties pertaining to the OPEN RANGE are a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

33. The actions of Defendant in failing to tender the OPEN RANGE to Plaintiff free of defects and refusing to repair or replace the defective OPEN RANGE constitutes a breach of the written and implied warranties and hence a violation of the Magnuson-Moss Warranty Act.

34. Plaintiff has performed all things agreed to and required of his under the sales contract and warranty terms, except as may have been excused or prevented by the conduct of Defendant as herein alleged.

35. As a direct and proximate result of the acts and omissions of Defendant, Plaintiff has been damaged in an amount in excess of $75,000.00 according to proof at trial.

36. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's

fees, if Plaintiff prevails. As a proximate result of the Defendant's misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

### COUNT 3: NEGLIGENT REPAIR

37. Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

38. On numerous occasions after the sale, Plaintiff delivered the OPEN RANGE to the Defendant through its authorized warranty service dealers for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

39. On each such occasion, Plaintiff is informed and believe, and thereupon allege, that Defendant through its authorized warranty service dealers attempted the repairs of the OPEN RANGE pursuant to his obligations under the express and implied warranties. Defendant owed a duty of care to Plaintiff to perform those repairs on the OPEN RANGE in a good and workmanlike manner within a reasonable time. The Defendant breached this duty to Plaintiff.

40. The Defendant's attempted repairs of Plaintiff's OPEN RANGE were done so negligently, carelessly, and recklessly as to substantially impair the OPEN RANGE's use, value, and safety in its operation and use. At no time was any repair attempt on Plaintiff's OPEN RANGE fully and completely repaired by the Defendant or its authorized warranty repair dealers, nor were many of the defective conditions fixed or significantly improved by the Defendant's repair attempts. Nonetheless, each time Plaintiff picked up the vehicle after the Defendant's repair attempts, Defendant through its authorized warranty repair dealers represented to Plaintiff that the repairs were

complete and Plaintiff relied upon these statements by the Defendant's representatives.

41. As a direct and proximate result of Defendant's negligent failure to repair the OPEN RANGE within a reasonable time or within a reasonable number of attempts, Plaintiff were unable to use his OPEN RANGE for weeks at a time. As a further direct and proximate result of the Defendant's failure to repair the OPEN RANGE in a timely and workmanlike fashion, Plaintiff was forced repeatedly to take the OPEN RANGE in for further repair attempts and to leave the OPEN RANGE for periods of time at great inconvenience to Plaintiff.

42. The damages Plaintiff has suffered as a direct and proximate result of Defendant's negligence exceed $75,000.00.

## VI.    Damages

43. The conduct described above has been and is a producing and proximate cause of damages to Plaintiff.

44. Plaintiff's damages include rescission of the sale including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, damages, together with applicable penalties and attorney fees allowed by law, and with legal interest upon the entire sums awarded from the date of judicial demand, until paid, and for all costs of these proceedings.

45. The damages Plaintiff has suffered as a direct and proximate result of Defendant' actions exceed $75,000.00.

## VII.    Request for Rescission

46. Plaintiff seeks the remedy of rescission of the sales contract.

47. Plaintiff revokes his acceptance of the OPEN RANGE for the reason that its defects

-11-

substantially impair its use, value, and safety to Plaintiff and the acceptance was based on Plaintiff' reasonable reliance on the false representations and warranties of the Defendant that the defects in the OPEN RANGE would be repaired, and no reasonable prudent buyer would have purchased the OPEN RANGE with knowledge of these defects prior to the sale. Accordingly, Plaintiff seeks a cancellation of the sales contract and an order of the court restoring to him the money obtained by Defendant as a result of the false representations and breaches of express and implied warranties as set forth above. Plaintiff also seek cancellation of the debt and offers to return the OPEN RANGE to the Defendant.

### VIII. Attorney Fees and Costs

48. Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails. As a proximate result of Defendant' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

### IX. Prayer for Relief

49. For these reasons, Plaintiff pray for judgment against the Defendant for the following:

   a.   For general, special and actual damages according to proof at trial;

   b    Rescinding the sale of the 2014 OPEN RANGE BUNK HOUSE 395BHS VIN 5XMFL3920E5013921 and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

   c.   For incidental and consequential damages according to proof at trial;

  d. Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges;

  e. Any diminution in value of the OPEN RANGE attributable to the defects;

  f. Past and future economic losses;

  g. Prejudgment and post-judgment interest;

  h. Attorney fees;

  I. Costs of suit, expert fees and litigation expenses; and

  j. All other relief this Honorable Court deems appropriate.

## X.   Demand for Jury Trial

50. Plaintiff hereby demands trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
1343 West Causeway Approach
Mandeville, Louisiana 70471
E-mail: rickcdalton@outlook.com
Tel. (985) 778-2215
Fax: (985) 778-2233

ATTORNEY FOR PLAINTIFF